84.101-01

IN Re,

RECEIVED IN
COURT OF CRIMINAL APPEALS
OCT 30 2015
Abel Acosta, Clerk

Elmo Fortenberry

Petitioner

In The Court of
Criminal APPeals
Austin Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS
OCT 12 2015
Abel Acosta, Clerk

Motion For Leave To File
WRit OF Review

In The Courts Original Jurisdiction oF The
Court of Criminal APPeals

Exparte, Sheppard 548 sw 2d 414, 416 (T.C.A 1977)
Tryed But Denyed A.T District And Local Level

Ex PArT JACKSon 602 sw 2d 535, 536, 537 (1980)
Court reFused To Consider or Rule on Petition

PLus I WANT To Show ProoF oF my Lawyer ABANdoning
me AFter Trial, And Never Told me ABout How To File
An Appeal or ThAT I realy Had Aright To Appeal Because
The Courts Never SAid, I HAd No Right To Appeal
The Conviction only No Right To Appeal The
punishment. See Rep. Rec. 3 oF 3 PAGe 8 Line 1,2
I'm Just Telling you Those Are The rights you're giving
up. "And whAT rights Are Those You may SAy."
P. 7, L. 21-25 giving up your right To, Contest Any
Evidence, in regard To your prior criminal Record,
giving up right oT Present Evidence For yourselF
consider in Assessing punishment.

The duty to Fully Advise The Client on Appeal matters.

You no From Page 4 of Rep. Rec. 3 of 3 Line 21,22 my Lawyer Never Told me any thing only Let The Court No He was not Helping me There eather, He could No He Had Allowed So much Error Even more Than I Am Showing Hear in This writ of Review

His Action in Hole Caused A Fund-Amentally unFair Trial
See, PASS more V. Estelle, 607 F2d 662 (5TH Circ 1979)

To The Honorable Justas of Said Court The Petitioner Prays The Court Receve And give Leave for writ of Review on Documented Error

Respectfully submitted
Elmo Fortenb_____

On The Day of
10-5-15

You will notice also the court or the Judge says on page, 10, Line, 2-6 Finding that you are willing to Accept the recommendation of the district Attorney's office with regard to punishment "Then says" I am willing to follow that recommendation nothing About no Right to Appeal conviction "see Also. Prosecutor" Mr. McCarthy page, 4 Line 16-19 The offer we extended A few minutes Ago was seven years T.D.C.J. Mr. Robnett's Client wishes to Accept that. still no waive his rights to Appeal conviction. Nor Did I sign A waver Except or Punishment evidence only.

Now see. where my Attorney Abandond me And At the same Time Let the courts no He would not be Telling me Any Thing About An Appeal. or Any Right's of How to Appeal. Page 4, Line 21, 22 Obviously, he'll waive his Right to Appeal, I Did not plea on conviction so I Did not Loos That Right or the Judge would Have stated it And I would Have signed A waver of Right's which I Did not

Lumpkin v. Smith 439 F.2d 1084 (5th Cir 1971)
   Attorney Failed to tell the defendant of rights to Appeal
Word v. State 740 SW2d. 794 (Tex Crim App. 1987) unless permitted to withdraw, The Trial attorney has the

IN RE,

ELMO Fortenberry

~~illegible crossed out~~
~~illegible crossed out~~

WRIT, NO. ___
C.O.A, NO. 11-15-00077-CR
TR. CT, NO. CR 43001
C.OC.A, NO. PD-0767-15

to the Court of
Criminal Appeals
Austin Texas

# Writ of Review

To The Honorable Chief Justice and Justices
of the Court of Criminal Appeals of Tex.

See Rule 44.2 Reversible Error in Crim cases (A) (b) (C). Then C.C.P. Art. 44.17 Appeal to court how conducted Based only on Error Reflected in records.

Come's Now Elmo Fortenberry, Petitioner Seeking Review of the Records, Actions And decision of Midland County District Court, under Exparte Axel whis Denied Right To Appeal By law.

This is Proof That my Lawyer Never Told me Any Thing About Rights To Appeal He Just Abandoned me Told the cour The Court, The Prosecutor, Never Said I Had No right to Appeal See Rep. Rec. 3 of 3 Page 4 Line 16-25 Then All The Court Says I can't Appeas is the Sentencing see Page 5 P.6, P. 7, P. 8 Line 1, 2, P.8, L. 2-6, Back To P. 4, Line 16,17 Now See P. 09. L. 2-15 nothing About my Right To Appea Conviction By Judge.

Action of Fraud By my Lawyer He did not Use Exhibit # See Rep. Rec. 1 of 3 Page 50, 51, 52, P. 50 L. 15, 23-25. Then P. 51, L. 1, 2 Now not my lawyer the Court L. 12, 13 Then See Lin 21-25 See P. 52. 1-6 No Exhibits #

Inefective Councel no Independent Investigation Rep. Rec. 1 of 3 Page, 50 Line 19-21 He Has never Been to The seen of the So caled crime you cant investiga without seeing

In Affidavit E. Gomez, Admits Comming At me and getting in my space. "I whalked up to him and Told Him To calm down Elmo Then placed his hands on me And pushed me. At That time I grabbed Elmo To Detain him. Elmo Pushed Away once AGAin And Then Began Striking me with His Fist "see Affidavit L. 6, 7

PAGE 1

In the Deputy Report for incident 14-00167, it stated:
"Mr Fortenberry rushed Deputy Gomez in an aggressive and fighting stance trying to push Deputy Gomez."
(See: Deputy Report - Synopsis 19, Page 2, Lh. 11-12).
Just above Deputy Gomez came at Mr. Fortenberry, Not Fortenberry rushing Deputy Gomez. Fact of matter, trying to push not punch in face, (Supra.) As stated in perjured testimony as follow:
[Q. by Prosecutor To Gomez]
"A. He struck me. Q. Struck you. How did he strike you.
A. He clinched his fists and tried to swing at me.
Q. Did he make contact. A. Yes" (RR. Vol. 1 of 3 pg 33 L. 3-9).
(Also see, Supra. pg. 33, Line 3-5).

## II.

Then (the) was the perjury of my being in the road. First, the road is Private, however, they lied and said it was public to justify the Officer putting his hands on me, as Public Intorieation, but road was private and they lied about it to justify their action as follow; please notice the contradictions (Perjury): [Q. by lend Prosecutor to Gomez]
"Q. (By Mr. McCarthy) Okay. Now when you got out there, did you pull over and attempt to make contact with Mr. Fortenberry? A. I drove to the end of the driveway, turned around and attempted to make contact with him." (RR. Vol. 1 of 3, Pg. 32, Lh. 6-10).
" A. I tried to grab him by his arm to walk to the side of the road" (RR. Vol. 1 of 3, p. 30, L 19-20)
" Q. Would the word 'Shephard' come to mind?
A. Yes, sir." (RR Vol. 1 of 3 pg 31-32 L. 21-22).
See how, D.A. head, Officer to being friendly.
"A. The language he was speaking to me. He didn't want to answer--he didn't want me to help him with the situation." (Supra. pg 33, Lh 21-23)
"... were you operating under color of your office or employment as a public servant. (Supra. Lh 15-16).
How could he be, he knew I did not want to talk to him. He was forcing himself on me to the extent of assaulting an "Elderly over 50" and he walked up to me.
"Deputy Gomez walked up to Mr. Fortenberry." (Dep. Rpt, Synopsis 19 pg 2 L10)
"them grabbing on to a gate resisting arrest" (Supra. Lh 14, 15)

Page 2

Now, how was I in the middle of the street. Deputy Gomez walked up to me, I grabbed a gate and a fence how WAS I in the middle of street.

"While Mr. Fortenberry was grabbed on to the fence he stated to Deputy Gomez 'let me go...'" (Supr. L. 16-17)

## II

Then there was the Perjury of the Call for Backup. In his Affidavit he stated he cuff me and called for backup, but to the Jury he Perjured and said I was too much for him and he couldn't even call for help to inflame the jury mind. [Q by Mr Roosa, Defense] To Gomez

"Q-- I guess to, what -- so you could let them know what had happened when you went out there?
A. What was going on. They check on you every so often. Q. Great. Good. And because they didn't receive any reply, then three other units went out there? A. That's right. (See R.R. Vol. 1 of 3 pg 50, L 3-10).

Main point is my lawyer (above) says "Great. Good", while asking how backup got there. Then, in Questioning by lead prosecutor:

"Q. Not by yourself. Who else -- did you call for any sort of backup or assistance? I wasn't able to. My radio had swung during the struggle." (RR Vol. 1 of 3 pg 38 L 19-22)

"Q. But, you didn't call any of them. A. No, Sir. (R.R. Vol. 1 of 3, pg 49, LL 16, 17).

However, in Deputy Gomez Affidavit he says, he did call for backup.

"At that point Deputy Gomez called for more units to help". (Deputy Report- Pg 3, LL 1-2)

"At that point I called for more units to help". (See: Deputy Gomez Affdvt - Line 9)

So which is it? Did he or did he not call for backup, let's look further. [Q. by Mr Roosa-Def. to Officer Deputy Strahan]

"Q (by Mr. Roosa) Deputy Strahan, how is it that you were sent out there? Were you dispatched by the 911 or were you contacted by anybody? How did you know to go out there? If I recall correctly, I overheard -- or I heard the response from Deputy Gomez which sounded like he needed assistance.

Page 3

"I'm not going to try to put words in your mouth. Could there have been that we have not heard from him so 'I need'-- the dispatch say, 'I need other units to go out there?" (See R.R. Vol. 1 of 3 pg. 80, LL 2-13)

Dispatch is a female, Eva Luna. The voice on the radio was male. The voice was Deputy Elias Gomez. How could it be dispatch when Eva is the only dispatch on that shift, on that day, for that call.

[Q. by McCarthy to Deputy Martinez]
"Q. Okay. Do you remember who broadcast the assist of Officer? A. Yes. Q. Who. A. Deputy Gomez." (R.R. Vol. 2 of 3 pg. 7, LL. 6-10)

[Q. by McCarthy to Deputy Strahan]
"Q. And why did you respond to the Residence? A. There was a call that had come out previous to that, previous to my response, which Deputy Gomez had responded. I don't recall what the original call was, but there was -- he had gotten onto the radio and advised that he need assistance." (Vol. 1 of 3, pg. 59 L. 24, 25 thru 60, L. 1-4).

Again, the prosecutor and judge, as well as, my attorney, see the key State witness and allege victim, Deputy Gomez, had committed perjury on the stand, and did nothing. Please Review.

## IV

Deputy Gomez, then Perjured about time on Sheriff Dept.
[Q. by McCarthy, A.D.A. to Deputy Gomez]
"Q. Okay. How long have you been employed with them? A. Two Years." (Vol. 1 of 3, p. 26, L. 12-14)
[Q. by Mr. Roosa-Def. to Deputy Gomez]
"Q. How long at that time had you been a Deputy? A. About a year." (Vol. 1 of 3, p. 53, L. 14-15)
[Q. by Mr. Roosa to Deputy Gomez]
"Q. All right. Had you ever been out to that location before? A. No, sir." (Supra. L. 4-5)

One year makes it sound more believable and less likely to have been out there than 2 years. Perjury none the less.

Page 4

## V

Ear Pulling? Did it happen:

"While on the ground Mr. Fortenberry grabbed Deputy
Gomez's left ear and attempted to rip it off"
(See Deputy Report-Synopsis 19 LL 20, 21)

This is what Deputy Report says but it is not even on affidavit.
Did it really happen at all or was it fabricated I can hold my ear
with one hand and rub behind it and it turns red just like his. The
scratches are not fingernail scratches more like Badge pin
scratches.     Now looking at the transcript.

[Q by McCarthy of Deputy Gomez]

"A. We were in a struggle. We fell. He landed on
his back and grabbed me by the ear and pulled
me down towards him." (Vol. 1 of 3, p. 34, L 10-12)

"I was pulled down to the ground"
(Supra. p. 35, L-11)

If this story was not fabricated, he would tell it the same.

## VI

This Handcuff testimony was more Perjury by Deputy Gomez.

"Elmo then came at me again in a fighting
stance I managed to get hold of both his
arms and finally place him in handcuffs".
(See Deputy Gomez Affdvt, LL. 9-10)

Plural more than one, but in Deputy Report it says:

"Deputy Gomez managed to get ahold of both
his arms and finally place on one hand in a
handcuff." (See Dpty Rpt. pg. 3, L. 4, 5)

Singular, only one in Deputy Report. However, in the transcript:

[Q. by McCarthy (Lead Prosecutor) to Deputy Gomez]

"Q. Okay. And who helped you gain control of
Mr. Fortenberry? A. Deputy Perkins. Q. Okay. And once
Deputy Perkins arrived, were able to take him
into custody? A. With a struggle. Q. Were you
able to get him in handcuffs? A. Yes, sir.
(See Vol. 1 of 3, p. 39, L. 7-14)

One place he says he got one hand in cuffs. Another he says he got both
hands in cuffs. And then he says, Deputy Perkins had to help. This is them

testifying for Deputy Perkins. Why did he not come testify to how combative I was and the help he gave. Because they already had the trial rigged.

## VII

There are (2) two ~~counts~~ ACTS PLACES of Perjury on Deputy Strahan I can show and (1) one count on Martinez and an assault when all he had to do was apologize for threatening to kill my "Dogs, my Kids".

## VIII

Acting under color of office? No, he was not. I had cancelled our encounter when I told him I wanted Sheriff Painter. Deputy Gomez, knew he was not acting under color of law. He states it at trial, in the transcripts, he didn't want me to help him with the situation.

[Q. by McCarthy to Deputy Gomez]
"A. The language he was speaking to me. He didn't want to answer -- he didn't want me to help him with the situation."
(Vol. 1 of 3, p. 33, LL 21-23)

Deputy Gomez is now outside the color of law, acting in a bridge of fraud.

## IX.

This Perjury where they told Jury a Private Road was Public. City and County Records were in their access to know the Truth.

[Q. by Robnett-Def. to Jacquelyn Fortenberry]
"Q. What color is the street sign, if you are aware of a NON-maintained County Road?
A. It's Brown. Q. Okay. And is there a different street sign color for a maintained county road, based on your -- A. Yes. Q -- personal knowledge A. Yes. They're blue. Q. Okay. So the red-brown color would be, from your perspective, as a Midland Resident -- Midland County resident the red color would be a county road but NON-maintained?"
Right. (Vol. 2 of 3, pg. 45, L. 9-25 thru 46, L 1).

Page 6

You see my lawyer knew about the color of the signs. He turned it from Brown to Reddish Brown To Red, because at night when lights hit it, it turns red.

[Q. by Mr. Roosa to Deputy Gomez]

"Q. Okay. Now, this road -- do you know whether that's a public or a private road? A. It's a publicly-maintained county road. Q. It was a county road that he was on? A. Yes, sir. That's a county sign."
(Vol. 1 of 3, p. 50, LL 11-15) Now see what he was call road before.

[Q. by Mr. McCarthy to Deputy Gomez]

"Q. (By Mr. McCarthy) Okay. Now, when you got out there, did you pull over and attempt to make contact with Mr. Fortenberry? A. I drove to the end of the driveway, turned around and attempted to make contact with him."
(See Vol. 1 of 3, p. 29, L 6-10).

That Road/driveway deadends 1½ acre past my house.

[Q. by Roosa to Deputy Gomez]

"Q. Okay. And this the gate that's there to the public -- this dirt, public road? A. No, sir."
(See Vol. 1 of 3, pg. 51, LL. 1,2) 50, L 25 to 51, L 1,2

"public -- this dirt public road. A. No, Sir."
(See Vol. 1 of 3, pg 52, LL 1, 2

[Q. by McCarthy to Deputy Gomez]

"Q. (by Mr. McCarthy [to Deputy Gomez]) Let me stop it there. Is this the road that you were responding to? A. Correct. At that point is where I turned onto the road. Q. Is there any sort of gate or other obstruction to the entrance to that road, blocking it off? A. No, sir, there's not."
(See: Vol. 1 of 3, pg. 67, LL. 12-18)

The Road does not have to be blocked or gated to be private. This was the testimony of all (3) three Officers nothing about color of sign. They knew I bet, unless they cut it off. You can see the color of Road sign on Exhibit 11 when he turns onto county road 97.

## X

This perjury was to make me sound worse.
"Get the dogs out here so they can kill this son-of-a-bitch".
(Vol. 1 of 3, p.56, L. 15-16)
"let my dogs go so they can get this motherfucker"
(See: Deputy Report, p. 3, L. 7-8).

## XI

Look at Deputy Report-16. Witness it says: "N/A". If they would have took a witness statement there fabrication would have off R.R. Vol. 1 of 3 p.56, L.6, who was around?
[Q. by McCarthy to Deputy Gomez]
"Q. Was there anyone else around while you and Mr. Fortenberry were engaged in this altercation? A. Yes, sir. Q. Who was around? A. I believe it was his wife" (Vol. 1 of 3, pg 56, L 3-7)
Now, see my wife's testimony:
[Q. by Robnett to Jacquelyn Fortenberry]
"Q. What did you see? What's the first thing you saw? A. The officer stopped and his window was down, and I couldn't hear what was being said. And my husband was beginning to open a gate, and the officer stepped out and grabbed my husband's arm. Q. And what happen next? A. He tried to get away from him, and then there was just -- After that, the officer was trying to choke -- not really choke him, but he had him -- instead of from behind, he had in front with his arm like this and pushing him. Q. Pushing your husband? A. Yes. Q. Was your husband in the middle of the street -- A street when the officer arrived? A. No." (Vol. 1 of 3, p.41, L.22-25 to p.42, L.1-3).
[Q. by McCarthy to Deputy Gomez].
"I drove to the end of the driveway, turned around and attempted to make contact with him" (Vol. 1 of 3, p.29, LL. 9-10).
Why did and how did he drive pass me and turn around if I was in the middle of the street. I was not.
"And my husband was beginning to open gate

And the officer stepped out and grabbed my husband's
Arm" (Vol. 2 of 3, p. 41, L. 25 thru p. 42, L. 1, 2)
This shows more perjury by Deputy Gomez.

## XII

Perjury by Deputy Gomez concerning Identifying me.
"Deputy Gomez made contact with the male who was
later identified as Elmo Ray Jr. Fortenberry".
(Deputy Report, Synopsis 19, para. 2, L. 2,3)
"[I made] contact with the male who was identified
as Elmo Fortenberry. (Deputy Gomez Affdvt., L. 3).
[Q. by McCarthy to Gomez]
"Q. (By Mr. McCarthy) Okay. Now when you got out there,
did you pull over and attempt to make contact with
Mr. Fortenberry? A. I drove to the end of the
driveway, turned around and attempted to make contact
with him". (Vol. 1 of 3, p. 29, LL. 6-10)
[Q. by Roosa to Gomez]
"Q. Did you identify right away that he's the person that
you had gone out there to inquire about? A. Yes, sir."
(Vol. 1 of 3, p. 52, LL. 15-17).
Now, he says I was identified later. Then he says he recognized
me right away. Really even before he got out of his car that is why
he put his car and himself between me and my house instead of
going to my door to see what was up. Perjured fraud to further the fabrication

## XIII

Deputy Gomez story shows a lot of trouble getting control, it even
took (2) two officers, Gomez and Perkins, (see Vol. 1 of 3, p. 39, L. 7-14), but
here he says I had a hard time walking, or standing.
[Q. by McCarthy to Deputy Gomez]
"A. He was -- his speech was very slurred. He had a
glassy look to his eyes. He was also -- his movements
were complete, but they were lethargic, especially when
we were trying to walk him back to the vehicle.
He was having a hard time walking, standing on his
own." (Vol. 1 of 3, p. 64, LL 13-17).
I could not walk or stand, but I could fight. Really!

# XIV

## The Vindictiveness Of State's Attorney

[Closing Argument by Lead Prosecutor, Mr McCarthy]

"There's no conspiracy here, ladies and gentlemen. I'm not trying to hide anything from you. Just keep that in mind" (Vol. 2 of 3, p. 87, L 13-15)

[Closing Argument by McCarthy]

"Elias Gomez's testimony we've already covered it. He's got no reason to lie." (Vol. 2 of 3, p. 90, LL 18-19)

"No reason to get this man in trouble, none whatsoever." (Supra. L 20)

Only to protect the Sheriff from getting on Channel 7 News again. Because they don't want to help a convicted felon. You could contact my parole officer, I had. I was off parole, but he is the one that let me know after the first time Sheriff was on T.V., I was not going to get help from them. Here's more Vindictive Prosecution.

[Closing by McCarthy]

"Elmo Fortenberry's neighbor's house". (Vol. 2 of 3 pg 86, L 23)

This is not neighbor's house it's a small storage shed on the lot. I watch after his stuff. I sold him a little piece of land.

[Closing by McCarthy]

"She lied to you at least five times "(Supra, p. 87, L. 24)

"She loves him. She loves him enough to make vows to him, till death do they part. That's a clear motive to lie. Clear." (Supra. pg 88, L. 4-6)

[Closing by McCarthy]

"Well, let's talk about those lies, said at least five times. First, one that she tried to pass off the Defendant's intoxicated state as "Oh, he only had a couple of beers". 2 of 3 p. 88. L. 17-20

Two beers in 20 or 30 minutes is legally intoxicated, plus I had a shot of whiskey she did not know about. She don't keep up with my every move. Vindictive Slanderous statement, fiend by State's Attorney.

[Closing by McCarthy]

"Then, she testified Deputy Gomez wasn't injured. Clearly, he was. Clearly. That's lie number four". (Supra. p. 89, L 18-20)

[Q. by McCarthy to Jacquelyn Fortenberry]
"Okay. Clearly, when you testified that he
didn't [get injured], that wasn't true, correct?
A. I never saw the officer.
(See Vol. 2 of 3, pg 69 L.25 to pg 70, L.1-2)
Corporal Perkins talk to her not Deputy Gomez so she did not know.
This is fraudulent statement by State's Attorney again and he knew it
not only is he using vindictive tactics, but he is slandering my wife
to the jury.
[Closing by McCarthy]
"At least five outright lies told by Jackie
Fortenberry." (See Vol. 2 of 3, p. 91, L 16)
"Where's the reasonable doubt" (Supra. L. 17)
This is Vindictiveness by State's Attorney. Now let's count the
times the state's attorney called Jackie, a lier. Five times in five
pages. How many times did my lawyer call Deputy Gomez a lier, zero,
or perjured himself, zero, again.

## XV

Let's look at more assisting in fabrication by Midland. The Court
I was tried had NO indictment, no transfer from one
court to the other, and then back. Then, Judge Durr, tried to
convince ya'll she was the Judge that heard the case. No, it was
Judge Moore. Then, Court Reporter, Kelly Allen, tried to take place of Court Reporter
Ruthie Cox to cover up that the trial was in 238th District Court, instead
of 385th District Court of Midland County. Midland County will stop
at nothing to win. Look at some of the statements they got
my lawyer to make for them; Not produce on Video Tape in Gomez car.
Or make them produce full audio on phone call.
[Q by Robnett of ~~Jacquelyn Fortenberry~~ Deputy Martinez]
"they're not in their normal state of mind Q. No,
it's irrelevant to the-- it doesn't stop the people
of Midland County from being able, through the District
Attorney Office to prosecute, right? (Vol. 2 of 3, p. 23, L 5-8) That's my lawyer.
"Well, we would like to designate him as a expert witness
based upon his experience, his knowledge of field sobriety, of how--" (Supr. pg. 24 L 21-23)
That's my lawyer again making the State look right can do no wrong.

There has been a lot of the state committing wrongs, the proof is in there papers and testimony from beginning to end, then some. Now, it has been over 2 months since I first wrote the Court of Criminal Appeals. I have only received (1) one card from the 1½ weeks after I wrote them 3½ weeks ago. I sent an amendment because I got court transcripts finally. I have received No response, so I come back to you. With No answer from them you still have Power of Review. I am in fear for my life. How far will Midland County really go to shut someone up.

## Prayer

WHEREFORE, ALL CONSIDER, the Petitioner prays for Review in all above stated matters of Perjury and Wrong Doings, and this Court, will go to them and see where and what is going on.

Respectfully Submitted,

x ELMO ForTenberry

## Unsworn Declaration

I, Elmo Fortenberry, TDCJ# 1949652, presently incarcerated in the James V. Allred Unit, in Wichita County, Texas, declares under Penalty of Perjury, the foregoing was True and Correct.

Executed On: 10-5-15

x Elmo Fortu

Declarant

Page 12

Appendices

This deals with Trial Counsel's Ineffective Assistance Of Counsel
Issue - Mental State
Part of Charge of the Court to the Jury — In Charge of the Court to the
Jury on Page 7, paragraph 8, lines 6,7,8 ~~R.R. Vol. 1 of 3~~, we see the Court
brought up mental state, as follow:
"'Conduct' means an act or omission and its accompanying mental state.
'Required culpability' means the mental state required by law such as intent
knowledge, recklessness, or [criminal negligence]."
In R.R. Vol. 2 of 3, pg. 23, lines 4-9 in Questioning by Robnett to ~~Deputy Gomez~~
"A. But it can contribute to what they're--they're not in their
normal state of mind. Q. No, It's irrelevant to the--it doesn't
stop the people of Midland County, from being able, through the
district attorney's office, to prosecute, right? A. That's correct."
Now, if my lawyer would have been working for me, not the state, he would
have been let that go instead of pointing out to the jury ~~that he does~~ not
to consider that fact at all. In Vol. 2 of 3 of R.R. p. 24, L.14-18, we see:
"MR. ROBNETT: The relevance is ~~that~~ this individual -- we've had
a lot of evidence about alcohol, and I want to point out to the
jury that alcohol is irrelevant in this case, as far as the elements
of the offense."
A defense lawyer would have let that go to see if the Jury would pick that
defense. Especially, since he had none of his own, or did not try to apply
the Story, the way my wife told it. "The Real Story"

Next Issue - Counsel making State's Witness an Expert:
My lawyer helped the State throughout this Whole Trial. I just showed one, now let's
look at another. In R.R. Vol. 2 of 3, p. 21, LL. 15-25 - Q. by Robnett to Deputy Martine-
"Q. Now, you are, are you not, the enforcer of the law on the streets
of Midland County? A. Yes, sir. Q. You have to be almost a lawyer, a
police officer, an administrator, a medic, all those things as you do
your job on a daily basis? A. For the most part, yes, sir. Q. Now, these
gentlemen and the judge, obviously, went to law school. But the fact of
the matter is, you have to know the law better than we do in order to
know if a violation of the law took place, correct? [Them on pg 22 L1, Supra] Supra, RR Vol 2 of 3 p 21 L 15-25
A. We have to know the elements of a crime--" [Supra]
On down that same page 22 L13-23 it reads:
"Q. I know it's not a crime to be intoxicated. But I'm saying it's not a
defense to a crime if you're intoxicated? In other words, a person

P. 13
APPEN
(P. 13)

[Supplement - Page]

--you know the law probably better than we do. And you know if a person is driving while intoxicated, it is not a defense to the crime because the person is intoxicated? A Yes. [Q. I mean [OMIT]

All so page 24, lines 21-23, Supra.

" MR. ROBNETT: Well, we would like to designate him as an expert witness, based upon his experience, his knowledge of field sobriety, of how--"

Now, why is my lawyer building up a state witness to where he can do no wrong, and is an expert that is not helping the Defense. The only thing he wanted from me was my money. The only thing he, WAS FOR ME FOR, was my money. Now, look at his statement in R.R. Vol. 1 of 3, p. 91, L. 24-25

<u>Issue - My lawyer pronounce a sure win for the state</u>

"THE COURT: Ya'll don't see any problem with the charge. MR. ROBNETT: No, Well, I anticipate it's a Ralph Petty Charge." (R.R. Vol. 1 of 3, p. 91, L. 22-25)

My lawyer just a well said "he is already convicted".

"McCarthy: Yes. Mr. Roosa: That will be fined if it's a Ralph Petty charge." (R.R. Vol. 1 of 3, p. 92, L. 1-3)

Just as well said get him convicted and off our streets, and off our sheriff. Ralph Petty use to win by cheating and having help. Look further we see more:

" MR. ROBNETT: Judge, we would move for a direct verdict, based upon the fact that the evidence deduced therefore does not rise to the level of beyond a reasonable doubt. THE COURT: Okay, That's denied. MR. ROOSA: That's fine. I just wanted to get it on record that we ask for it. THE COURT: Okay" (R.R. Vol. 2 of 3, p. 28, L 14-21)

Now, those grounds should have stated, no physical proof of striking and hitting of face is where he was struck and hit by testimony at in Report and affidavit. Not struck in ear plus the perjury of E. Gomez".

<u>Issue: Burden Of Proof</u>

My lawyer did not make the state bring proof of audio and video in car, only perjured testimony by E. Gomez, and the road they all knew it was private maintained, not county maintained.

The purpose of this <u>Writ Of Review</u> is for this Court to determine for review. Does the above show #1) Ineffective Assistance Of Counsel; #2) Prosecutional Misconduct; #3) Fraud; #4) Perjury. Because I did not commit this crime. See my wife's testimony, it tells the truth. That is why, E. Gomez put his car and himself between me and my house like I have already pointed out, to arrest, not talk, or anything, He said. You have have this power to help an innocent man. And I'm asking this Court to help me now.